STEPHEN WEEKS & others *vs.* WILLIAM S. ADAMSON.

The decision of a justice of this court, refusing a review of a judgment rendered in the superior court, is final, if it involves no question of law.

This court will not grant a review of a judgment rendered in the superior court, for the mere reason that the justice presiding at the trial refused a continuance or postponement, in the honest and intelligent exercise of his discretion.

PETITION for the review of a judgment recovered in the superior court at October term 1870 by the respondent against the petitioners as owners of the brig Thames, for his services as her supercargo. The petition alleged that the action was brought at April term 1870, and the nature of the claims at issue therein, and of the proceedings thereon, was as follows:

The brig sailed from Boston for the coast of Africa in December 1867, and arrived there in February 1868, with one Loring as her supercargo. In April 1868, while she was still on the African coast, Loring died, and the plaintiff took possession of the cargo and Loring's books of account, and proceeded to sell the cargo, and buy a return cargo. When the brig reached St. Thomas in the West Indies, on her return voyage, an agent, sent out by the owners for the purpose, took possession of her and of the return cargo; and the plaintiff delivered to him a book purporting to contain his accounts, and afterwards presented to defendants a further account. By a computation from these, it appeared that the plaintiff's receipts had exceeded his disbursements, and the defendants declared in set-off, for the balance due to them according to this computation, against the plaintiff's claim for compensation for his services.

Before the case was set down for trial, the defendants moved for a reference of it to an auditor; but on the plaintiff's objection

the court delayed to pass on the motion until the case came on for trial, on Wednesday, November 23, 1870, when the defendants renewed the motion, and after the case had been opened the court granted it, and referred the case to an auditor upon condition that he should report on Monday morning, November 28. Thursday, the 24th, was Thanksgiving day; the auditor compelled the parties to a hearing on Friday, the 25th; and about noon of Saturday, the 26th, he filed his report in the clerk's office; but the defendants had no notice that it was filed, until after the office was closed, and had no opportunity to see it, or know what it was, before Monday morning, the 28th.

At the hearing before the auditor, the plaintiff " admitted that the book was in his handwriting, and was the only account he had kept of the transactions, but testified that where he had written ' cash received ' it did not mean that he had received cash, and that it was part cash and part bills which he had paid that had been contracted by Loring, and he was unable to state how much was cash and how much bills, but stated generally that all the money he received he spent on account of the brig and cargo." The auditor found for the plaintiff, and stated no account, but reported that the plaintiff paid to the defendants' use all the money which he received.

On Monday morning, November 28, at nine o'clock, the court ordered the trial to proceed, whereupon the plaintiff put the auditor's report in evidence, and rested his case. The defendants, who then saw the report for the first time, objected to its admission in evidence, on the ground that it stated no account; but the judge overruled the objection. The defendants then moved for a postponement or continuance, on the ground that they were surprised by the plaintiff's testimony before the auditor, as to the manner in which his accounts were kept; that they had proceeded thus far, relying on the book and the account which he had rendered to them, as a complete defence to his action; but that in view of his testimony they ought to have an opportunity to procure evidence to show that he received cash, as his book showed, and also to show that Loring contracted no bills which he did not himself pay. They also moved for a continuance on

the ground that the mate of the brig, who was present during all the transactions of the plaintiff, was absent from the country and never had been here since the action was brought, and the defendants had never been able to find where he was, as he was absent at sea. These motions were overruled; the defendants "were compelled to go to trial without any witnesses whatsoever;" and a verdict was returned for the plaintiff for $700 damages.

The petition further alleged that after the verdict the defendants presented a bill of exceptions to the judge's ruling admitting the auditor's report; and that the judge refused to allow it, on the ground that no exceptions were saved at the time of the ruling. And it prayed for a review, for the reason of this refusal, and also on these grounds: 1. "That it now appears, by an examination of the auditor's report, that if a computation was had of the items allowed by him and those admitted by the defendants at the trial, then there would be nothing due to the plaintiff." 2. "That it appears on the back of the shipping articles, that the plaintiff was discharged before the British consul by mutual consent, and the petitioners are informed and believe that it is the usage of the consulate office to have all questions of wages settled at such times, which usage was unknown to them at the time of the trial, wherefore they believe that the plaintiff must have acknowledged full satisfaction for his wages at that time." 3. "That the plaintiff contended that he used the funds to pay the wages of the men, and since the verdict two actions have been begun against the petitioners for the wages of sailors who were on board the brig under the plaintiff." 4. "That the petitioners say and believe that they have a full and complete defence to the action brought, if they can have a fair opportunity for trial."

At the hearing, before *Ames*, J., the respondent objected to the allowance of the petition, "on the ground that the rulings of the justice of the superior court were upon matters entirely within his judicial discretion, and that it did not appear that there had been an unreasonable exercise of that discretion;" the objection was sustained, and the petition ordered to be dismissed with costs for the respondent, and the petitioners alleged exceptions.

*L. M. Child*, for the petitioners.  This court has authority to grant the review.   Gen. Sts. *c.* 146, § 21.   And it is its duty to exercise the authority, if the petitioners have not had a fair trial of their case by reason of the ruling of the justice of the superior court on their motion for a postponement or continuance. *Reynard* v. *Brecknell*, 4 Pick. 302.   *Clark* v. *Brigham*, 22 Pick. 81.   *Ward* v. *Clapp*, 6 Met. 414.   *Ely* v. *Hawkins*, 15 Ind. 230. *Sheldon* v. *Hawes*, 15 Mich. 519.   They did not have a fair trial, if, although they used due diligence, the effect of the refusal of the motion was to deny them an opportunity to present their case fully to the jury.   *Morrell* v. *Kimball*, 1 Greenl. 322.   *Haskell* v. *Becket*, 3 Greenl. 92.   *Converse* v. *Carter*, 8 Allen, 568.   The discretion of the justice whether or not to grant the motion is no ground for refusing a review.   One purpose of the statute of reviews is to remedy injustice done in the exercise of such discretion.

*S. J. Thomas*, for the respondent.

WELLS, J.   These exceptions cannot be sustained.

1. The petition is addressed to the judicial discretion of the court.   The decision of the single justice, refusing the review, as it involves no question of law, is final and not open to exception.

2. The matter set forth as ground of review related to the conduct of the trial in the court below.   It was within the discretionary authority of that court; and the review was properly refused.

The decision in *Converse* v. *Carter*, 8 Allen, 568, settles both points.                                    *Exceptions overruled.*